# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| STATE OF OHIO,<br><br>    *Plaintiff*,<br><br>v.<br><br>WYNN COGGINS, in her official capacity as Acting Secretary of Commerce; U.S. DEPARTMENT OF COMMERCE; RON S. JARMIN, in his official capacity as Acting Director of the U.S. Census Bureau; and U.S. CENSUS BUREAU,<br><br>    *Defendants*. | No. 3:21-cv-64<br><br>**COMPLAINT FOR INJUNCTIVE AND MANDAMUS RELIEF** |

## INTRODUCTION

1. This suit challenges the decision of the Census Bureau, a component of the Department of Commerce, to unlawfully ignore the statutory deadline for providing census population data to the States. *See* 13 U.S.C. §141(c). The Secretary of Commerce, who oversees the Census Bureau, must tabulate and report population data to the States "as expeditiously as possible" following the census, and "*in any event*" no later than one year after the decennial census date. *Id*. (emphasis added). Because the decennial census date was April 1, 2020, the date by which data must be given to the States under §141(c) is March 31, 2021. Despite this legally binding deadline, the Census Bureau announced it would not give the States the redistricting data by March 31, and that it would instead submit data to the States by September 30, 2021. In other words, it announced that the Acting Secretary would not fulfill her obligation to share this data with the States by the March 31 deadline.

2. This delay means that the decennial census data will not be available to the State of Ohio as it works to complete its redistricting process by constitutionally prescribed deadlines. The commission charged with determining the state legislative districts, for example, must finalize its work by September 1, 2021. The unavailability of decennial census data irreparably harms the State: the Ohio Constitution *requires* the State to use decennial census data during redistricting if that data is available, and allows the use of alternative data sources only as a second-best option. By blocking the State from conducting redistricting using decennial census data, the Census Bureau's decision prevents the State from conducting redistricting in the constitutionally preferred manner.

1

3. The State of Ohio seeks declaratory relief affirming that the defendants' actions violate 13 U.S.C. § 141(c) and the Administrative Procedure Act. The State of Ohio additionally requests that this Court: (1) set aside the Census Bureau's unlawful decision; and (2) issue an injunction either prohibiting the defendants from delaying the release of Ohio's redistricting data beyond March 31, 2021, or else requiring the defendants to provide the State with Ohio's population data at the earliest date this Court deems equitable. Alternatively, the State of Ohio seeks a writ of mandamus requiring the Secretary to meet the statutory March 31 deadline. This relief will allow the State to finalize legislative maps consistent with the strictures of the Ohio Constitution.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. §1331, §1361, and §§2201–02.

5. Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) and (e)(1).

## PARTIES

**I. Plaintiff**

6. Plaintiff, the State of Ohio is a sovereign state of the United States of America.

7. The State is aggrieved by the defendants' actions and has standing to bring this action because the defendants' decision damages the State's sovereign and proprietary interests, including by interfering with the administration of the State's constitutionally required redistricting process.

2

## II. Defendants

8. Defendant Wynn Coggins is the Acting Secretary of the U.S. Department of Commerce and is sued in her official capacity. Acting Secretary Coggins oversees the U.S. Department of Commerce and the Census Bureau. Congress has given the Secretary of Commerce responsibility for carrying out the decennial census. 13 U.S.C. §141(a).

9. Defendant U.S. Department of Commerce is a cabinet agency within the Executive Branch responsible for administering the decennial census.

10. Defendant Ron S. Jarmin is the Acting Director of the U.S. Census Bureau and is sued in his official capacity.

11. Defendant U.S. Census Bureau is an agency within the Department of Commerce responsible for planning and administering the decennial census. 13 U.S.C. §2.

## FACTUAL ALLEGATIONS

### I. Legal Requirements Pertaining to the Census

12. Article I, section 2, clause 3 of the U.S. Constitution vests in Congress the responsibility to direct the taking of a decennial census.

13. Through the Census Act, Congress has vested the Secretary of Commerce with authority to carry out the decennial census. The Census Act provides that the Secretary of Commerce "shall, in the year 1980 and every 10 years thereafter, take a decennial census of population as of the first day of April of such year, which date shall be known as the 'decennial census date.'" 13 U.S.C. §141(a). "The Secretary is aided in that task by the Census Bureau, a statistical agency housed

3

within the Department of Commerce." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2561 (2019); *see also* 13 U.S.C. §2.

14. In 1975, Congress passed Public Law 94-171, codified at 13 U.S.C. §141(c), to require the Secretary of Commerce, as aided by the Census Bureau, to provide States the opportunity to request and receive census population data in small geographic areas, which would aid the States in legislative redistricting. 13 U.S.C. §141(c).

15. The "decennial census date" is defined as April 1 of every year that ends in the numeral 0. 13 U.S.C. §141(a). April 1, 2020, is the decennial census date relevant here.

16. Following the decennial census date, 13 U.S.C. §141(c) sets a clear, one-year limit for the Secretary, aided by the Census Bureau, to complete her work: population tabulations "shall, *in any event*, be completed, reported, and *transmitted to each respective State within one year after the decennial census date*." 13 U.S.C. §141(c) (emphasis added).

17. The Census Bureau recognizes it has a "legal requirement" to send population data to the States "within a year following Census Day." *Redistricting File (Public Law 94-171) Dataset*, U.S. CENSUS BUREAU (Feb. 3, 2011), https://www.census.gov/data/datasets/2010/dec/redistricting-file-pl-94-171.html.

18. This binding legal deadline is March 31, 2021—that is the last date to provide the data "within one year after the decennial census date" of April 1, 2020. 13 U.S.C. §141(c).

4

**II.    The Census Bureau Unilaterally Amended the Deadline Imposed by §141(c).**

19.    On February 12, 2021, the Census Bureau announced, in what this Complaint will call the "February 12 Decision," that it would not comply with the March 31 deadline.

20.    The Bureau announced that it had "been able to finalize a schedule for the redistricting data" and that it would not deliver redistricting data to any State until September 30, 2021. James Whitehorne, *Timeline for Releasing Data*, U.S. CENSUS BUREAU (Feb. 12, 2021), http://bit.do/fNNHR (attached as Exhibit 1).

21.    The Census Bureau explained "COVID-19 delayed census operations significantly." The Census Bureau also explained that its focus on delivering apportionment data to the President "has delayed some of the processing activities necessary to generate the redistricting counts." James Whitehorne, *Timeline for Releasing Data*, U.S. CENSUS BUREAU (Feb. 12, 2021), http://bit.do/fNNHR.

22.    Instead of delivering redistricting data to States on a staggered basis as planned (starting on February 18, 2021, and finishing on March 31, 2021), the Census Bureau determined it would provide redistricting data to all States on one date by September 30, 2021. James Whitehorne, *Timeline for Releasing Data*, U.S. CENSUS BUREAU (Feb. 12, 2021), http://bit.do/fNNHR. The Bureau's press release announcing the delay stated: "Different from previous censuses, the Census Bureau will deliver the data for all states at once, instead of on a flow basis." *Press Release: Census Bureau Statement on Redistricting Data Timeline*, U.S. CENSUS BUREAU (Feb. 12, 2021), http://bit.do/fNNHY (attached as Exhibit 2).

23. The Census Bureau admitted it was "acutely aware of the difficulties that this delayed delivery of the redistricting data will cause some states," given the "statutory or even state constitutional deadlines and processes" binding some States. James Whitehorne, *Timeline for Releasing Data*, U.S. CENSUS BUREAU (Feb. 12, 2021), http://bit.do/fNNHR.

24. The Census Bureau's justifications for delay—to "ensure" the delivery of "high-quality fit-for-use data products;" to "[c]omplete delivery to all states several weeks earlier than the last states would have otherwise received it;" and to "[b]etter manage the production process"—did not explain why the Bureau rejected alternatives less damaging to certain States, including releasing data early to the States facing earlier redistricting obligations. James Whitehorne, *Timeline for Releasing Data*, U.S. CENSUS BUREAU (Feb. 12, 2021), http://bit.do/fNNHR.

25. The February 12 Decision solidified public concern about the States' ability to properly complete their redistricting processes prior to primaries and regular elections for the November 2022 cycle. *See, e.g.*, Hansi Lo Wang, *6-Month Delay in Census Redistricting Data Could Throw Elections Into Chaos*, NPR (Feb. 12, 2021), http://bit.do/fNEJ8.

### III. Ohio has adopted state constitutional measures to prevent partisan gerrymandering.

26. To establish a more bipartisan, transparent redistricting process, voters in Ohio overwhelmingly approved two constitutional amendments, in 2015 and 2018, amending the procedures for drawing state legislative districts and federal congressional districts. *See 2015 Official Election Results*, OHIO SECRETARY OF STATE,

6

https://www.ohiosos.gov/globalassets/elections/2015/general/officialsummary.xlsx (last visited Feb. 25, 2021); *2018 Official Election Results*, OHIO SECRETARY OF STATE, https://www.ohiosos.gov/globalassets/elections/2018/pri/summaryissues.xlsx (last visited Feb. 25, 2021).

27. Today, Article XI of Ohio's Constitution establishes a bipartisan, transparent process for drawing Ohio General Assembly districts. The bipartisan, seven-member Ohio Redistricting Commission is "responsible for the redistricting of this state for the general assembly." *Id.*, §1(A). The Commission must adopt a district plan no later than "the first day of September of a year ending in the numeral one." *Id.*, §1(C). Before doing so, the Commission "shall conduct a minimum of three public hearings across the state to present the proposed plan and shall seek public input." *Id*. The Commission may approve a map only if it receives the "affirmative vote of four members of the commission, including at least two members of the commission who represent each of the two largest political parties represented in the general assembly." *Id.*, §1(B)(3).

28. The Ohio Constitution creates a different method for drawing federal congressional districts, under Article XIX of the Ohio Constitution. The General Assembly has until "the last day of September of a year ending in the numeral one" to adopt a congressional map. *Id.*, §1(A). By that date, it must secure "the affirmative vote of three-fifths of the members of each house of the general assembly, including the affirmative vote of at least one-half of the members of each of the two largest political parties represented in that house." *Id*. If the General Assembly fails to meet

that deadline, then the Ohio Redistricting Commission "shall adopt a congressional district plan not later than the last day of October of that year." *Id.*, §1(B). It can do so only with "the affirmative vote of four members of the commission, including at least two members of the commission" representing the "two largest political parties represented in the general assembly." *Id.*, §1(B). If passed through either of these methods, the federal congressional district plan remains effective for ten years. *Id.*, §1(A), §1(B).

29. If the Commission is unable to reach an agreement, then the General Assembly may adopt a plan by the end of November. That plan still must win the "affirmative vote of three-fifths of the members of each house," along with "the affirmative vote of at least one-third of the members of" the two largest parties. *Id.*, §1(C). As a fourth option, if the General Assembly is still unable to reach an agreement, it may adopt a plan by the vote of a simple majority of members of each house. *Id.*, §1(C)(3). To deter the legislature from relying on this fourth option, the Constitution specifies that any plan adopted through this less-bipartisan method expires after "two general elections for the United States house of representatives." *Id.*

30. These processes outlined in Articles XI and XIX are set to be implemented for the first time this year, based on the population data from the 2020 Census.

31. If the federal decennial census data is unavailable when the time comes to draw new districts, the Ohio Redistricting Commission and the General Assembly

must draw new districts based on the population "determined" on another basis as the General Assembly may direct. Ohio Const., art. XI, §3(A); art. XIX, §2(A)(2).

## IV. Ohio will suffer injury from the defendants' delay in transmitting redistricting data.

32. Because the Ohio Redistricting Commission, charged with drawing state legislative districts, must finalize boundaries by September 1 and hold three hearings before doing so, it will be unable to use the decennial census data if redistricting data is not shared with the States substantially in advance of September 30. Instead, it will have to use an alternative source of data as directed by the General Assembly.

33. Similarly, unless the General Assembly, charged with drawing federal congressional districts, receives the data well in advance of September 30, it will not be able to use that data to meet its initial September 30 deadline for passing a congressional map. If the General Assembly misses its September 30 deadline, responsibility for drawing congressional districts shifts to the Ohio Redistricting Commission. Ohio Const., art. XIX, §1(B).

34. The State will be irreparably harmed by the February 12 Decision, because the delayed release of the redistricting data forces the Commission and the General Assembly to either use alternative data or miss their deadlines for acting.

35. The Constitution requires, as a first-best option, that both the Commission and the General Assembly use decennial census data. Ohio Const., art. XI, §3(A); art. XIX, §2(A)(2).

36. The Constitution allows the use of alternative data *only* as a backup in

case the census data is "unavailable." Ohio Const., art. XI, §3(A); art. XIX, §2(A)(2).

37. Every time a State is prevented by the federal government from effectuating state law, it suffers a form of irreparable harm. *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018); *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers). Thus, because the February 12 Decision operates to bar the State from effectuating its constitutionally mandated first option for redistricting, the Decision threatens irreparable harm.

38. The February 12 Decision, insofar as it forces the State to use alternative data sources, will also cause irreparable harm by instigating high-stakes debates regarding which data to use and by fanning partisan flames when one data source is eventually chosen, no matter how precise and reliable.

39. By requiring the General Assembly to debate and quickly decide which data to use just before the highly charged redistricting process, the February 12 Decision will undermine the State's significant interest "in protecting public confidence in the integrity and legitimacy of representative government." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197 (2008) (op. of Stevens, J.); *see also Mays v. LaRose*, 951 F.3d 775, 787 (6th Cir. 2020).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of Census Act, 13 U.S.C. §141(c); U.S. Const. art. II, §3

**The February 12 Decision is *Ultra Vires* because it Violates the Census Act.**

40. The State incorporates by reference the allegations in the preceding paragraphs.

41. In purporting to amend a congressionally prescribed deadline, the February 12 Decision conflicts with the Census Act, exceeds the defendants' statutory authority, and violates the Constitution's Take Care Clause, U.S. Const. art. II, §3.

42. Under the Census Act, the Secretary of Commerce, with the aid of the other defendants, is required to submit population data from the April 2020 decennial census to the States by March 31, 2021. 13 U.S.C. §141(c).

43. The Census Bureau has repeatedly acknowledged as much. On its website, it correctly refers to the March 31, 2021 deadline as a legal requirement. U.S. CENSUS BUREAU, *Redistricting File (Public Law 94-171) Dataset* (Feb. 3, 2011), https://www.census.gov/data/datasets/2010/dec/redistricting-file-pl-94-171.html.

44. Despite the plain text of the statute as well as the Census Bureau's concurring interpretation, the February 12 Decision replaces the Census Act's mandatory deadline with a new deadline of the defendants' own creation. The defendants have no legal authority to alter statutory mandates.

45. For these reasons, the February 12 Decision violates the Census Act, 13 U.S.C. §141(c), and must be enjoined under this Court's equitable power to "grant injunctive relief against" officials "who are violating, or planning to violate, federal law." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015).

## SECOND CLAIM FOR RELIEF
### Violation of the Administrative Procedure Act, 5 U.S.C. §706

### The February 12 Decision is Not in Accordance with Law

46. The State incorporates by reference the allegations of the preceding paragraphs.

47. The APA requires this Court to hold unlawful and set aside any final agency action that is "not in accordance with law." 5 U.S.C. §706(2)(A).

48. The February 12 Decision is a final agency action.

49. The February 12 Decision is "not in accordance with law," *id.*, because it contradicts, and purports to override, the congressionally imposed deadline of March 31.

50. For the reasons set out in paragraphs 41 through 44, the February 12 Decision must be vacated and "set aside" because it is "not in accordance with law," 5 U.S.C. §706(2)(A); it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.*, §706(2)(C); and it is "contrary to constitutional right, power, privilege, or immunity," *id.*, §706(2)(B).

### THIRD CLAIM FOR RELIEF
### Violation of the Administrative Procedure Act, 5 U.S.C. §706(2)(A)

### The February 12 Decision is Arbitrary and Capricious

51. The State incorporates by reference the allegations of the preceding paragraphs.

52. The APA requires this Court to hold unlawful and set aside any final agency action that is "arbitrary, capricious, . . . or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

53. The February 12 Decision is arbitrary and capricious because the agency, in issuing it, "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the

product of agency expertise." *Motor Vehicles Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Under the February 12 Decision, and "[d]ifferent from previous censuses, the Census Bureau will deliver the data for all states at once, instead of on a flow basis." *Press Release: Census Bureau Statement on Redistricting Data Timeline*, U.S. CENSUS BUREAU (Feb. 12, 2021), http://bit.do/fNNHY. The Bureau claimed that this "single national delivery" would ensure "that the Census Bureau can provide accurate, high quality, and fit-for-use data in the least total amount of time to all states." James Whitehorne, *Timeline for Releasing Data*, U.S. CENSUS BUREAU (Feb. 12, 2021), http://bit.do/fNNHR. This response fails to address the fact that States have different redistricting deadlines of varying flexibility. Constitutionally prescribed deadlines like Ohio's, for example, are more inflexible and harder or impossible to change. There is no indication that the agency properly considered that problem, including by considering ways it might address the varying needs of different States, such as by prioritizing States with earlier and inflexible deadlines. The failure to think through that obvious and serious issue was arbitrary and capricious.

54. The February 12 Decision is additionally arbitrary and capricious because the agency failed to properly "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020). The agency failed to assess and weigh the varying degrees to which States relied on the March 31 deadline, and so failed to account for

13

significant reliance interests in deciding to release all the data at once long after the March 31 deadline.

55. For this reason and others, the February 12 Decisions must be vacated and "set aside" as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

### FOURTH CLAIM FOR RELIEF
### Entitlement to a writ of mandamus under 28 U.S.C. §1361

56. "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. §1361.

57. A court may grant a writ of mandamus to a plaintiff who has "exhausted all other avenues of relief" for enforcing "a clear nondiscretionary duty" that the defendant owes to it, *Heckler v. Ringer*, 466 U.S. 602, 616 (1984), and if issuance of the writ is "appropriate under the circumstances," *Cheney v. United States Dist. Court*, 542 U.S. 367, 381 (2004).

58. If the Court determines the State is not entitled to an injunction, the State has no other avenue of relief to keep the Secretary from breaching a clear nondiscretionary duty.

59. The Secretary's failure to act in a timely fashion will cause the irreparable harms as discussed above, and issuance of "the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381.

60. Therefore, if the Court determines that the State is unable to obtain injunctive relief, the Court should issue a writ of mandamus requiring the Secretary

to comply with the March 31 deadline imposed by §141(c).

## PRAYER FOR RELIEF

61. The State requests that this Court:

    a. Declare that the February 12 Decision violates the Census Act, 13 U.S.C. §141(c), and that the February 12 Decision is arbitrary and capricious or otherwise not in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. §706(2)(A).

    b. Vacate the February 12 Decision that delays the release of redistricting data to the States.

    c. Enjoin the defendants from implementing the February 12 Decision and from failing to fulfill their statutory duties under 13 U.S.C. §141(c) by March 31, 2021—or, alternatively, enjoin the defendants from delaying the release of data beyond the earliest possible date this Court determines equitable and that will allow the State to use the redistricting data during the redistricting process.

    d. Issue a writ of mandamus requiring the timely sharing of redistricting data by March 31, 2021, as required by 13 U.S.C. §141(c).

Dated: February 25, 2021　　　DAVE YOST (0056290)
　　　　　　　　　　　　　　Ohio Attorney General

　　　　　　　　　　　　　　*/s/ Benjamin M. Flowers*
　　　　　　　　　　　　　　BENJAMIN M. FLOWERS* (0095284)
　　　　　　　　　　　　　　Solicitor General
　　　　　　　　　　　　　　　*Trial Attorney*
　　　　　　　　　　　　　　MAY DAVIS (*PHV application pending*)
　　　　　　　　　　　　　　Deputy Solicitor General
　　　　　　　　　　　　　　BRIDGET C. COONTZ (0072919)
　　　　　　　　　　　　　　Section Chief, Constitutional Offices
　　　　　　　　　　　　　　JULIE M. PFEIFFER (0069762)
　　　　　　　　　　　　　　Assistant Section Chief, Constitutional Offices
　　　　　　　　　　　　　　30 East Broad Street, 17th Floor
　　　　　　　　　　　　　　6l4-466-8980
　　　　　　　　　　　　　　614-466-5087; fax
　　　　　　　　　　　　　　benjamin.flowers@ohioattorneygeneral.gov

　　　　　　　　　　　　　　*Counsel for the State of Ohio*